**FILED**
JUN 17 2010
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Carl W. Hampe (DC Bar # 440475)
*Paul W. Virtue (DC Bar# 465594)
*Steven M. Chasin (DC Bar # 495853)
Baker & McKenzie LLP
815 Connecticut Ave., NW; Suite 1200
Washington, DC 20006
Phone (202) 835 4259     Fax (202) 416 6979
Carl.Hampe@Bakermckenzie.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Fogo de Chão Churrascaria (Holdings) LLC**<br>14881 Quorum Drive, Suite 750<br>Dallas, TX 75254<br><br>**Plaintiff,**<br>v.<br><br>**U.S. Department of Homeland Security**<br>Washington, DC 20258<br><br>**Janet Napolitano, Secretary,**<br>**U.S. Department of Homeland Security**<br>Washington, DC 20258<br><br>**U.S. Citizenship and Immigration Services**<br>111 Massachusetts Ave. N.W.<br>Washington, DC 20529-2000<br><br>**Alejandro Mayorkas, Director,**<br>**U.S. Citizenship and Immigration Services**<br>111 Massachusetts Ave. N.W.<br>Washington, DC 20529-2120<br><br>**Daniel Renaud, Director,**<br>**U.S. Citizenship and Immigration Services –**<br>**Vermont Service Center**<br>30 Houghton Street<br>St. Albans, VT 05478-2399<br><br>**Defendants.** | Case: 1:10-cv-01024<br>Assigned To : Walton, Reggie B.<br>Assign. Date : 6/17/2010<br>Description: Admn Agency Review |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR WRIT OF MANDAMUS**

## INTRODUCTION

1. This action challenges Defendants' ability to deny visa petitions by simply ignoring the *evidence* supporting them. Plaintiff's exceptionally successful business model rests upon its ability to transfer a small number of veteran, authentic gaucho chefs (known as *churrasqueiros*) from its restaurants in Brazil to its U.S. restaurants, to train locally-hired U.S. *churrasqueiros*.

2. As explained below, the transfer of just three to five of these veteran *churrasqueiros* enables Plaintiff to open a new restaurant in the U.S., in turn creating 70-90 new U.S. worker jobs. Accordingly, in the past thirteen years—over which Plaintiff has opened sixteen new U.S. restaurants—Defendants have approved 116 visa petitions by Plaintiff for this purpose (along with 135 subsequent extensions of such petitions).

3. Yet on May 20, 2010, Defendants denied Plaintiff's petition for Rones Gasparetto—a *churrasqueiro* slated to be transferred to Plaintiff's Washington, DC restaurant—even though it was virtually indistinguishable factually from the 116 petitions (and 135 extensions) approved before it.

4. Defendants reached this decision by simply ignoring Plaintiff's evidence and the applicable preponderance of the evidence standard. This practice, if allowed to continue, will significantly harm Plaintiff's business.

## PARTIES

5. Plaintiff Fogo de Chão Churrascaria (Holdings) LLC ("Fogo") is a Delaware limited liability company, headquartered in Dallas, Texas.

6. The U.S. Department of Homeland Security is the federal agency bearing responsibility for administration and enforcement of the nation's immigration laws.

2

7. Defendant Janet Napolitano is sued in her official capacity as Secretary of the U.S. Department of Homeland Security, in which she is charged with the just administration and enforcement of the immigration laws. 28 U.S.C. § 1103(a).

8. U.S. Citizenship and Immigration Services, a bureau of the U.S. Department of Homeland Security, is responsible for awarding visa petitions in appropriate circumstances consistent with the Immigration and Nationality Act, 28 U.S.C. § 1101, et seq (the "INA"). As used below, "USCIS" refers to both the U.S. Citizenship and Immigration Services, and predecessor agency U.S. Immigration and Naturalization Services.

9. Defendant Alejandro Mayorkas is sued in his official capacity as Director of USCIS.

10. Defendant Daniel Renaud is sued in his official capacity as Director of the USCIS Vermont Service Center ("USCIS-Vermont"), which denied Plaintiff's visa petition on behalf of Mr. Gasparetto.

### JURISDICTION AND VENUE

11. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. See *Califano v. Sanders*, 430 U.S. 99, 105 (1977) (except where statutes preclude review, 28 U.S.C. § 1331 "confer[s] jurisdiction on federal courts to review agency action"). See also, 5 U.S.C. § 702; 28 U.S.C. § 1361; 28 U.S.C. §§ 2201–2202.

12. Because Defendants' decision on a petition for L-1B visa status is not discretionary, neither the immigration laws (see, e.g., 8 U.S.C. § 1252(a)(2)(B)(ii)) nor the Administrative Procedures Act, 5 U.S.C. § 701 et seq (the "APA") withdraws jurisdiction. See, e.g., *Spencer Enterprises, Inc. et al v. United States*, 345 F.3d 683 (9th Cir. 2003).

13. Venue properly lies in this judicial district under 28 U.S.C. § 1391(e), in that Defendants are agencies and officers of agencies of the United States, and Defendant Janet Napolitano, sued

in her official capacity as Secretary of the U.S. Department of Homeland Security, resides in this judicial district.

## FACTS

### Fogo Conveys an Authentic *Churrasco* Experience

14. Founded in 1979 in Brazil, Fogo owns and operates authentic, upscale Brazilian steakhouses (known as "*churrascarias*") in six locations in Brazil, and sixteen cities throughout the U.S.—including one in Washington, DC.

15. Fogo conveys an authentic experience of *churrasco*, the Brazilian gaucho way of preparing meat. The distinct Brazilian gaucho culture and *churrascaria* style of cooking originate from the rural pampas region of Southern Brazil. Fogo began in 1979 by providing this authentic rural Brazilian experience to urban customers in Porto Alegre, Brazil.

16. Critically, Fogo limits its hiring of *churrasqueiros* in Brazil only to genuine gauchos from the rural Brazilian pampas, who have grown up with the *churrascaria* cooking style. These *churrasqueiros* authentically convey the gaucho experience to customers, in part because they acquired this skill from their fathers, who acquired it from theirs. At Fogo's restaurants, the *churrasqueiros* leave their positions at the fire to circulate through the dining room, offering to carve skewered meats and answering questions about *churrasco* and gaucho traditions. In this manner, Fogo recreates for its patrons the ambience of hospitality at a gracious Brazilian ranch (or "*estancia*") in the 19th Century upon the celebration of a special occasion.

17. Fogo's strict adherence to the original Southern Brazilian *churrascaria* distinguishes it from competitors and places it at the top of the market. Fogo's average dinner tab in the United States is $70 per person, and each restaurant generates $8-$15 million in annual revenue. Fogo is a highly respected and widely recognized multinational company with aggregate annual global

revenues in 2009 of approximately $150 million, of which approximately $115 million originated from U.S. restaurants. These exceptional economic results can be achieved at a U.S. Fogo restaurant with the admission into this country of as few as three to five authentic Brazilian gauchos.

### Fogo Uses Brazilian *Churrasqueiros* to Train U.S. Local-Hire *Churrasqueiros*

18. Fogo employs approximately 1,030 people in the United States. The vast majority of these are U.S. workers. Only **65 are Brazilian foreign nationals**—but these Brazilian employees are critical because they train the locally-hired American *churrasqueiros* at each U.S. restaurant and ensure that each restaurant conveys the authentic *churrasco* experience to its U.S. patrons. Fogo demonstrated through expert opinion in its visa applications to Defendant USCIS that its competitive advantage in the United States was the authenticity of the *churrasco* experience that it conveyed to its customers. The Brazilian c*hurrasqueiros* have grown up in the rural Brazilian pampas, have extensive experience with the gaucho culture, *and* have at least two years experience as c*hurrasqueiros* at Fogo's restaurants in Brazil.

19. To bring these veteran c*hurrasqueiros* to its U.S. restaurants, Fogo petitions the USCIS for "specialized knowledge" nonimmigrant intracompany transferee L-1B visas. The L-1B visa is the means by which multinational businesses temporarily transfer foreign employees to their American operations.

20.     Pursuant to 8 U.S.C. § 1101 (a)(15)(L), an applicant qualifies for an L-1B, if

> within 3 years preceding the time of his application for admission into the United States, [he] has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and [he] seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, *or involves specialized knowledge* . . . . (emphasis added).

The INA does not define "specialized knowledge," but the USCIS has promulgated a regulation stating: "Specialized knowledge means special knowledge possessed by an individual of the petitioning organization's product, service, research, equipment, techniques, management, or other interests and its application in international markets, or an advanced level of knowledge or expertise in the organization's processes and procedures." 8 C.F.R. 214.2(l)(1)(ii)(D).

21.     Plaintiff established its first U.S. restaurant thirteen years ago. Since then, the USCIS has approved—at each of its four regional Service Centers—*116* of these "specialized knowledge" L-1B petitions exclusively for the intracompany transfer of veteran Brazilian *churrasqueiros* (along with 135 L-1B extensions). In each of these, Plaintiff satisfied the "specialized knowledge" requirement by supplying documentary evidence of how both the nature of the position of *churrasqueiro* within the Fogo business strategy, as well as each individual *churrasqueiro*, satisfied the statutory and regulatory requirements.

22.     With those L-1B approvals, Fogo has been able to expand its business into new U.S. cities—which is critical to creating opportunities and incentives for existing employees. It requires the transfer of only *three to five* veteran *churrasqueiros* from Fogo's Brazilian restaurants to open a new U.S. restaurant. And each Fogo restaurant in the U.S. directly creates *70-90 U.S. worker jobs*. Conversely, the fate of the 70-90 American jobs at each existing Fogo restaurant essentially depends upon those core *churrasqueiro* positions.

6

### Defendants Deny Plaintiff's Petition on Behalf of Mr. Gasparetto

23.     On February 4, 2010, Fogo filed a petition for a "specialized knowledge" L-1B visa to USCIS-Vermont on behalf of Mr. Rones Gasparetto—a *churrasqueiro* at Fogo in Brazil for more than two years—for transfer to Fogo's Washington, DC restaurant. Mr. Gasparetto—like virtually all other Fogo *churrasqueiros* in Brazil—was raised in the rural Brazilian pampas and began learning gaucho and *churrasco* traditions as a very young man.

24.     Plaintiff provided extensive documentary evidence for this petition, including three expert opinions from U.S. and Brazilian restaurant industry specialists. *See* Exhibit A (Fogo letter supporting petition, without attachments). Upon its first review of the petition filed on behalf of Mr. Gasparetto, USCIS-Vermont failed to even address this evidence. Rather, it requested *additional* evidence through a Request for Evidence on February 9, 2010. *See* Exhibit B.

25.     Fogo responded with a ***nineteen-page*** explanation of how the petition established Mr. Gasparetto's employment in a "specialized knowledge" capacity. Fogo's response included quoted excerpts from the relevant restaurant industry experts whose opinions were included in the initial petition. *See* Exhibit C (without attachments).

26.     Yet Defendants inexplicably denied this petition on May 20, 2010. This decision made no attempt to square the denial with any of the preceding 116 approved petitions (and 135 extensions)—including ten petitions which USCIS-Vermont had approved in the five months before. See *Omni Packaging, Inc. et al v. U.S.I.N.S.*, 733 F. Supp. 500, 502 (D.P.R. 1999)("The court may find an abuse of discretion if the INS . . . decided the case in a manner inconsistent with its own precedents.")

27. Defendants failed in the denial decision to assess whether Plaintiff's evidence met the preponderance of the evidence standard. *See Matter of Pazandeh*, 19 I&N Dec. 884 (BIA 1989). Rather, the decision simply *ignored* vast amounts of Fogo's documentary evidence, including all of the expert opinions. *See* <u>Exhibit D</u>. The expert opinions included: (i) an expert on the Brazilian gaucho and *churrasco* tradition, (ii) a former instructor at the Culinary Institute of America, and (iii) a well-respected U.S. restaurant industry analyst.

## EXHAUSTION

28. It would be futile for Plaintiff to exhaust the administrative appeal remedy available for the denial of an L-1B visa petition. USCIS acknowledges the current processing time for that administrative appeal is eleven months. *See* <u>Exhibit E</u> (I-129L: Nonimmigrant Intracompany Transferee). Plaintiff could easily lose its marketplace advantage if it has to wait almost one year for a decision on the improper denial of its L-1B petition.

29. Moreover, Plaintiff's actual experience attempting to exhaust its administrative remedies with respect to other L-1B visas belies USCIS' figure. For example, on April 11, 2008, Fogo filed administrative appeals challenging the USCIS' revocation of petitions of seven *churrasqueiros* whose L-1B petitions USCIS previously had approved. More than ***twenty-six months*** later, not a single one of these cases has been resolved. Each case has been pending with Defendant USCIS' Administrative Appeals Office during this time, with no answer in sight. No work authorization under the L-1B visa is permitted during the pendency of an administrative appeal.

## INJURY

30. Defendants' wrongful denial of the petition has caused and will continue to cause Plaintiff great financial harm, including:

- Loss of a qualified *churrasqueiro* slated to join Plaintiff's busy Washington, DC restaurant, who would be otherwise available to train the locally-hired U.S. *churrasqueiros* in that restaurant;

- Diluted authenticity of experience for Fogo's DC restaurant patrons; and

- Loss of market place advantage against industry competitors.

31. Defendants' unlawful practice, if allowed to continue, will preclude Plaintiff from expanding into additional U.S. markets and significantly harm Plaintiff's U.S. business—and along with it, the hundreds of U.S. jobs made possible by Plaintiff's previous access to a small number of uniquely talented foreign nationals.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION–DEPRIVATION AND VIOLATION OF RIGHTS UNDER THE INA

32. In denying Plaintiff's petition, Defendants unlawfully interpreted and applied the term "specialized knowledge" under 8 U.S.C. § 1101 (a)(15)(L), including through imposition of an impermissibly high burden of proof on Plaintiff. *Matter of Pazandeh*, 19 I&N Dec. 884 (BIA 1989).

33. As a result, Defendants deprived Plaintiff of its rights under the INA to benefit from the statute's intracompany transferee provisions, and thereby violated those rights. 8 U.S.C. § 1101 (a)(15)(L).

## SECOND CAUSE OF ACTION–VIOLATIONS OF APA

34.     Defendants' denial of Plaintiff's petition is improper and reviewable under the APA.  5 U.S.C. § 702.

35.     As a result of Defendants' improper denial of Plaintiff's petition, Plaintiff is "suffering a legal wrong of agency action" and is "adversely affected or aggrieved by agency action," and therefore "is entitled to judicial review thereof." 5 U.S.C. §702.

36.     Defendants' decision to deny Plaintiff's "specialized knowledge" L-1B visa petition was based upon an interpretation contrary to and inconsistent with 8 U.S.C. § 1101 (a)(15)(L) and 8 C.F.R. 214.2(l)(1)(ii)(D).

37.     Defendants' decision to deny Plaintiff's petition—particularly in light of a record providing ample evidence of Mr. Gasparetto's "specialized knowledge"—was "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law." 5 U.S.C. §706(2)(A).  The APA directs that the "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).  The volume and quality of the evidence which Plaintiff supplied substantiating the "specialized knowledge" requirement—in both the petition and in its response to the Request for Evidence—indicate an entirely different factual setting and compel an opposite result of that reached in *Boi Na Braza Atlanta, LLC v. Upchurch*, No. 3:04-CV-20007-L, 2005 U.S. Dist. LEXIS 21323 (N.D. Tex. Sept. 27, 2005); *aff'd*, 2004 U.S. App. LEXIS 21466 (5th Cir. Aug. 22, 2006).

38.     Defendants breached their duty to fully take into account Plaintiff's evidence supporting Mr. Gasparetto's employment in a "specialized knowledge" capacity.  The APA directs that the

"reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. §706(2)(D).

39. Defendants have breached their duty owed to Plaintiff to properly adjudicate the petition for the L-1B visa. The APA directs that the "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1).

## THIRD CAUSE OF ACTION–MANDAMUS ACT

40. The failure of Defendants to take into account the evidence supporting Plaintiff's petition—in particular, Mr. Gasparetto's employment in a "specialized knowledge" capacity—and the resultant failure to properly decide the petition, constitutes a violation of a duty owed to Plaintiff. *See* 8 U.S.C. 1101(a)(15)(L); 8 C.F.R. 103.2(b)(8)(i) ("If the evidence submitted with the application or petition establishes eligibility, USCIS *will approve* the application or petition . . . .")(emphasis added).

41. The Court therefore has authority under the Mandamus Act, 28 USC §1361, to compel Defendants to adjudicate properly Plaintiff's petition—consistent with Defendants' duties owed to Plaintiff.

## FOURTH CAUSE OF ACTION–DECLARATORY JUDGMENT ACT

42. Plaintiff is entitled to a declaration of its rights, which shall have the force and effect of a final judgment, in accordance with 28 U.S.C. § 2201(a).

## **PRAYER FOR RELIEF**

Plaintiff hereby prays for relief as follows:

1. That the Court hold unlawful and set aside the USCIS finding that the evidence fails to establish that Mr. Gasparetto has been and will be employed in a "specialized knowledge" capacity;

2. That the Court hold unlawful and set aside the USCIS decision denying Plaintiff's petition on behalf of Mr. Gasparetto as not in accordance with law;

3. That the Court declare that Plaintiff has submitted sufficient evidence to establish that Mr. Gasparetto has been and will be employed in a "specialized knowledge" capacity, as set forth in INA Section 101(a)(15)(L), at 8 U.S.C. § 1101 (a)(15)(L).

4. That the Court compel Defendants to perform their duty owed to Plaintiffs, and to adjudicate properly Plaintiff's L-1B visa petition on behalf of the current beneficiary and any future beneficiaries on the merits and in accordance with the above declarations;

5. That the Court provide further relief as it deems appropriate, just, and equitable.

DATED June 17, 2010

Respectfully submitted,

Carl W. Hampe (DC Bar # 440475)

*Paul W. Virtue (DC Bar# 465594)
*Steven M. Chasin (DC Bar # 495853)

Baker & McKenzie LLP
815 Connecticut Ave., NW; Suite 1200
Washington, D.C. 20006
Phone  (202) 835 4259
Fax    (202) 416 6979
Carl.Hampe@bakermckenzie.com
Attorneys for Plaintiff

*Not admitted before the U.S. District Court for the District of Columbia